UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME OWENS,

    Plaintiff,                                       Civil Action No. 14-CV-11128

vs.                                                  HON. BERNARD A. FRIEDMAN

CAROLYN W. COLVIN,

    Defendant.

_____/

**OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 14, 16]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge a final decision denying his applications for Social Security disability insurance benefits and Supplemental Security Income. By decision of an Administrative Law Judge ("ALJ") in July 2011, defendant found that plaintiff is not disabled because he can perform a limited range of light-level work with a sit/stand option (Tr. 105-14). In January 2012 the Appeals Council remanded the matter for further proceedings (Tr. 119-20). In September 2012, after conducting another hearing, the ALJ found that plaintiff can perform a limited range of sedentary work with a sit/stand option (Tr. 15-27). This became defendant's final decision when the Appeals Council declined plaintiff's request for review (Tr. 1).

Under § 405(g) the issue is whether the ALJ's decision is supported by substantial

evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the matter de novo, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

   The medical evidence in this case has been summarized (albeit incompletely) in the ALJ's decision and in the parties' briefs, and it need not be recounted in detail here. In short, plaintiff claims that he has been disabled since June 15, 2007 (when he was 43 years old), due to pain and spasms in his back; pain in his neck, shoulders, left arm, and left hand; fainting spells; and depression (Tr. 38, 62-64, 304). After the second hearing, the ALJ found that despite plaintiff's severe impairments of "annulus bulge L4-L5 and L5-S1; mild degenerative changes of the right hip; left ulnar neuropathy with denervation and reinnervation at elbow, neurocardio syncope, and depression" (Tr. 18), plaintiff has the residual functional capacity ("RFC") to a perform a limited range of sedentary work (i.e., not involving climbing or exposure to heights and restricted to simple, repetitive tasks) with a sit/stand option (Tr. 20). A vocational expert ("VE") testified to the existence of several thousand jobs in southeastern Michigan, in the areas of assembly, inspection and packaging, which a person with this RFC could perform (Tr. 49).

   In his summary judgment motion, plaintiff argues that the ALJ did not adequately explain the RFC determination (including the non-exertional limitations she found applicable) or the credibility findings, or adequately discuss the medical evidence and the hearing testimony. He

2

also argues "[t]here is not a scintilla of evidence to support [the ALJ's] RFC assessment that [he] would be capable of work at the light exertional level including work that requires lifting up to 10 pounds, standing, and walking, on a sustained basis," and that the ALJ should have made specific findings regarding the limitations caused by his left hand and wrist impairment. Pl.'s Br. at 12-13. Defendant argues that the ALJ's decision is supported by substantial evidence in the record and should be affirmed.

Having reviewed the entire administrative record and the parties' briefs, the Court finds that the case must be remanded for further proceedings. It is apparent that the ALJ (1) did not consider all of the medical evidence; (2) did not develop the record concerning the side effects of plaintiff's medications, make findings regarding the side effects, or include such findings in her hypothetical question(s) to the VE; (3) relied heavily on the opinions of the consultive physicians, Drs. Shaw and Karo, who apparently were unaware of any of plaintiff's medical records, including x-rays and CT scans of plaintiff's back and hip; and (4) did not develop the record concerning plaintiff's left arm, elbow, and wrist pain. These errors must be corrected on remand.

As to the first issue, the Court notes that after the ALJ issued her first decision in this matter, the Appeals Council remanded with instructions that the ALJ, among other things, "[o]btain updated medical records from the claimant's treating sources" (Tr. 119). On the day of the second hearing, the ALJ issued a subpoena directed to Professional Medical Center requiring it to submit plaintiff's medical records to her (Tr. 465). In response, this healthcare provider produced 32 pages of records from 2011 and 2012 showing plaintiff's complaints of, treatment for, and medications prescribed for his various mental and physical impairments, including back pain, muscle spasms, wrist pain, and depression (Ex. B14F, Tr. 466-97). While the ALJ reviewed the other medical

3

evidence in this case, there is no mention in her decision of these medical records. This clearly violates "the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). The case must be remanded for the ALJ's consideration of Ex. B14F. This additional evidence might well lead the ALJ to revise her RFC and credibility findings.[1]

Regarding the second issue, plaintiff testified at the first hearing that his medications make him drowsy (Tr. 65) and that he naps daily for 30-60 minutes (Tr. 78). The ALJ did not inquire further or make any findings as to the nature and extent of this side effect or include any such findings in her hypothetical question(s) to the VE. Nor did she pursue this issue further at the second hearing. The record indicates that plaintiff has, at various times, been prescribed many medications for pain, muscle spasms, and depression, including Tramadol, Effexor, Valium, Vicodin, Hytrin, Etodolac, Terozosin, Vasotec, Flexeril, and Neurontin (Tr. 37, 41, 374, 380, 393, 401, 403, 427, 454-59, 466-75). Rather than inquiring further about the side effects or making any other effort to develop the record, despite plaintiff's testimony that his medications made him "drowsy" and that he naps 30-60 minutes per day, the ALJ disposed of this medically and vocationally significant issue with a single sentence to the effect that "the record fails to indicate any significant side effects from medications" (Tr. 25). On remand, the ALJ must (1) determine which medications plaintiff is taking and has taken during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects on plaintiff and (3) incorporate these

---

[1] The Court notes that the ALJ faults plaintiff for not seeking medical care more regularly (Tr. 25). The 32 pages of records from Professional Medical Center may alter this assessment.

4

findings in proper hypothetical questions to the VE to determine whether work exists in significant numbers that can be performed by a person experiencing such side effects.

Regarding the third issue, the Court notes that the ALJ gave "significant weight" to the opinion of Dr. Shaw, who examined plaintiff in April 2010 at the request of the state disability determination service (Tr. 380-86), and that she gave "limited weight" to the opinion of Dr. Karo (to the extent she found plaintiff capable of work above the sedentary level), who examined plaintiff in June 2011, also at the request of the state disability determination service (Tr. 403-17). Both of these physicians found that plaintiff can sit, stand, and walk with minimal, if any, limitation. Dr. Shaw opined that plaintiff "can work eight hours a day. He can sit, stand, walk, bend minimally and lift no more than 10 pounds of weight without difficulty" (Tr. 381). Dr. Karo opined that "[t]here is no physical limitation of sitting, standing and walking" (Tr. 405).

While an ALJ generally may rely on the findings and conclusions of consultive physicians, in this case such reliance was not reasonable because Drs. Shaw and Karo rendered their opinions without reviewing the x-rays and CT scans of plaintiff's spine and hip. X-rays of plaintiff's lumbar spine in February 2010 showed disc space narrowing at L5-S1, L4-5, L4-3, and L3-2 (Tr. 391). X-rays in June 2011 showed "80% disc space narrowing of the C2-3 and C3-4 levels [and] non-segmentation of the C4-5, C5-6, and C6-7 levels with accentuation of kyphosis," mild degenerative changes in plaintiff's left hand, and "10% disc space narrowing of the L5-S1" (Tr. 406). X-rays of plaintiff's lumbar spine in September 2011 showed "degenerative spurring" (Tr. 481). And CT scans in March 2012 showed minimal degenerative changes in plaintiff's right hip and "degenerative disc disease at the level of L4-L5 and L5-S1 with annulus bulge at the level of L4-L5 and L5-S1 with effacement of the anterior thecal sac and the left neural foramen at the above

5

mentioned levels" (Tr. 461, 463). Some of these tests post-dated the reports of Drs. Shaw and Karo, while other tests predated the reports but were not mentioned in the doctors' reports. In any event, it was error for the ALJ to place any weight on the reports of Drs. Shaw and Karo given those doctors' unawareness of these objective findings.[2] On remand, the ALJ must either request that Drs. Shaw and Karo amend their reports after reviewing all of the available objective evidence, or obtain a new consultive examination likewise requiring the examining physician to consider all of the available objective evidence in framing his/her opinion.

Finally, as to the fourth issue, the Court finds that the ALJ did not sufficiently develop the record regarding plaintiff's claims of pain and weakness in his left arm, elbow, and wrist. While the ALJ acknowledged that "EMG and nerve conduction studies performed on June 9, 2008, revealed evidence of left ulnar neuropathy with denervation and reinnervation at the elbow" (Tr. 22), she apparently dismissed this impairment because "[n]ormal results regarding the median nerve suggested carpal tunnel syndrom was unlikely as the cause of the claimant's wrist pain" (Tr. 22). Plaintiff testified at the first hearing that he has pain in his left wrist daily (Tr. 62) and that once per week or once per month his left wrist will "go out and I cannot grab nothing or grip nothing with it" (Tr. 76). The neurologist to whom the ALJ referred noted "[t]here is some atrophy . . . in the intrinsic muscles of the left hand as well as in the distal part of the left forearm" (Tr. 347). The neurologist concluded:

---

[2] The ALJ indicated that she gave Dr. Karo's report "limited weight" because "[r]ecent testing reveals further degenerative changes to the claimant's lumbar spine with bulging at L4-L5 and L5-S1 and the claimant testified he takes narcotic pain medication used to treat moderate to severe pain twice a day," and based on the other CT results (Tr. 23, citing Tr. 461 and Tr. 463). However, the ALJ does not explain why Dr. Karo's report was entitled to any weight, given her unawareness of these CT scans and the x-ray evidence noted above. And, as noted, she gave Dr. Shaw's report "significant weight" despite the same infirmity.

> The patient has a left ulnar neuropathy across the elbow. The degree of atrophy that we see in the intrinsic muscles of the hand and the duration of his symptoms from the time of the fall make it unlikely that any kind of surgery to release pressure on the ulnar nerve at the elbow would help at this point. . . . He does have wrist pain which would not be explained by ulnar neuropathy. Moreover, the nerve conduction studies show normal median nerve conductions and amplitudes and the strength of muscles supplied by the median nerve are normal, which make carpal tunnel highly unlikely. To investigate his wrist pain, we would recommend getting that his [sic] primary care gets an x-ray of the left wrist to look for musculoskeletal causes like arthritis.

(Tr. 348.) X-rays of plaintiff's left hand in June 2011 showed "[m]ild degenerative changes involving the first metacarpophalangeal joint. There are healing fracture deformities involving the scaphoid" (Tr. 406). Therefore, there is objective evidence supporting plaintiff's allegations of pain in his left arm, elbow, and wrist. It was error for the ALJ to dismiss this impairment simply on the grounds that the pain is not due to carpal tunnel syndrome. On remand, the ALJ must make specific findings regarding the nature and extent of the pain in plaintiff's left arm, elbow, and wrist, and include these findings in proper hypothetical question(s) to the VE. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is hereby remanded for further proceedings as directed above. This is a sentence four remand under § 405(g).

IT IS FURTHER ORDERED that the order referring this matter to Magistrate Judge Hluchaniuk is vacated.

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 6, 2015
       Detroit, Michigan